THE HEIRS OF JUAN MARRERO RIVERA, ETC., Plaintiffs and Appellees, *v.* JOAQUÍN SANTIAGO ET AL., Defendants and Appellants.

No. 10735. Argued March 3, 1953.—Decided April 27, 1953.

764

Ángel Roberto Díaz for appellants. V. Polanco de Jesús for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

In an action of revendication and for the recovery of fruits, the court *a quo* delivered an opinion which contains the following findings of fact:

"That Juan Marrero Rivera died on August 31, 1949, while married to Carmen Santiago; that he left neither children nor ascendants, the plaintiffs being the sole and universal heirs of Juan Marrero Rivera, as well as the defendant Carmen Santiago in the corresponding usufructuary quota; that Juan Marrero Rivera was a relatively well-off man having sold a certain property and received a check in May 1943, from the Government of Puerto Rico in the amount of Six Thousand Four

Hundred and Twenty Dollars and Nine Cents ($6,420.09) ; that at that same time Joaquín Santiago owned, together with his three brothers, two small businesses consisting of a grocery store and a small commercial establishment, which were and are in Juan Santiago's name one of them being located on San Sebastián Street and the other on Cruz Street; that the yearly volume of sales in both businesses did not exceed Fourteen Thousand Dollars ($14,000) and the profits ranged between ten and twelve per cent of that amount; that from the profits obtained from said businesses they defrayed their personal expenses, as well as the expenses of their parents who lived with them; that Joaquín Santiago had no other properties or income on other accounts; that on October 22, 1943, Juan Marrero Rivera closed a deal with Epifanio Toro Pérez by virtue of which the former purchased from the latter the house at number 72, 12th Street of the urbanization plan drawn by the Barrio Obrero Homestead Division of this city of San Juan, for the agreed price of Four Thousand Five Hundred Dollars ($4,500) ; that a deed was executed and it was set forth therein that the price involved in the sale amounted to Two Thousand Dollars ($2,000), which Mr. Juan Marrero Rivera gave to Joaquín Santiago in order that the latter should deliver them to the vendor, taking the remaining Two Thousand Five Hundred Dollars to Epifanio Toro Pérez' house during the afternoon and delivering them personally to the latter; that although the vendor made the entire business transaction with Juan Marrero Rivera, the deed was, nevertheless, executed on behalf of Joaquín Santiago; that the application filed in the Office of Homestead Division was also made on behalf of Joaquín Santiago; that this was done so because Juan Marrero Rivera could not acquire the property directly inasmuch as he had other properties and did not qualify as a purchaser pursuant to the regulations of the Homestead Division, but that Joaquín Santiago, because of his insolvency, was qualified and had the capacity to serve as purchaser pursuant to the existing requirements of the law; that the house in question, besides being purchased by Mr. Marrero, was managed, repaired and maintained as his, renting it and collecting the rents thereof until his death, on August 31, 1949, from which date the defendants have been collecting and receiving the rents of said property; that the money involved in the sale belonged to the conjugal partnership between Juan Marrero Rivera and Carmen Santiago."

It also contains the following conclusions of law:

"In accordance with the evidence presented to the consideration of the Court, the property involved in this action was purchased by Juan Marrero Rivera. The money paid for it belonged to the conjugal partnership between Juan Marrero Rivera and Carmen Santiago. If Mr. Marrero wished to donate said property to Joaquín Santiago, his wife's express consent was necessary or else the contract was void. This fact, in our opinion, is sufficient to establish the nonexistence of the contract, for there can be no contract when the essential requisite of the consent of one of the parties is lacking. But even more, as Santiago, the defendant, never paid a single cent for the property, he had not acquired anything in law, since he merely handed over the money delivered to him by Mr. Marrero Rivera for the vendor. There was no true consideration, the contract was therefore nonexistent insofar as Santiago is concerned, and the ownership of said property could never pass on to him. The mere fact that a price lower than the previous one agreed to was fixed did not void the contract, but since one of the essential requisites for the legal existence of a contract was missing, the consideration, the said contract was nonexistent inasmuch as it never had nor could it have actually taken place.

"From either viewpoint, whether because of lack of consent or lack of consideration, it is a fact that the deed in favor of Joaquín Santiago was simulated and is entirely nonexistent since it did no contain the essential requisites to make up a contract."

Based on that opinion, said court entered judgment declaring that the property described in the complaint belongs to Juan Marrero Rivera and Carmen Santiago; that since the former died *abintestato*, 50% of the property belongs to the heirs and 50% thereof to Carmen Santiago, and that Joaquín Santiago had to execute a deed of conveyance within ten days after the judgment became final and unappealable and if he did not do so, the marshal would do it on his behalf. The judgment decreed, furthermore, that the defendants had to render an account of the rents received from said property since Marrero Rivera's death, and that they should pay the costs and $250 as attorney's fees.

The defendants contend on appeal that the court *a quo* committed eight errors, to wit: (1) in granting the revendicatory action without the plaintiff's first obtaining the annulment of the existing title in favor of Joaquín Santiago; (2) in deciding that this is an action praying for the non-existence of a contract and not to annul the contract of sale, and that it is not barred; (3) that Joaquín Santiago was insolvent; (4) that there was no consent; (5) nor a true consideration; (6) in admitting the testimony of Epifanio Toro Pérez, inasmuch as he was estopped from testifying against his own acts; (7) in admitting evidence not contained in the deed of sale; and (8) in deciding that the house involved in the complaint belongs to the widow and to Juan Marrero Rivera's heirs.

■ At the beginning of the hearing, the defendants raised a question to the effect that in order to bring an action like this, the existing title in favor of Joaquín Santiago, the defendant, should have necessarily been annulled. However, when the trial judge remarked that the question should have been raised prior to the hearing, counsel for the defendants withdrew the question. He cannot, therefore, raise it now on appeal. See, nevertheless, *González et al.* v. *Fumero et al.*, 38 P.R.R. 497, 509–510; *The People* v. *Dimas et al.*, 18 P.R.R. 1019; *Trias* v. *Leaf Tobacco Co.*, 50 P.R.R. 88:[1] as well as Rule 18(*b*) of the Rules of Civil Procedure.

■ An action of revendication and for the recovery of fruits as the one with which we are now concerned does not prescribe within the four-year period fixed by § 1253 of the Civil Code, 1930 ed. An action to revendicate real property prescribes, according to § 1857 of that Code, after ten years as to persons present and after twenty years as to absentees, with good faith and under a just title; and after thirty years,

---

[1] Those cases lay down the principle that "When the plaintiff does not necessarily rest his cause of action on the nullity of the title of the defendant but on facts and causes other than such nullity, no application can be made of the rule of the previous prosecution of the action for nullity."

without the necessity of title or good faith, according to § 1859. The action to recover fruits was not barred either. *Capó* v. *A. Hartman & Co.*, 57 P.R.R. 190. Since the deed of sale in favor of Santiago was executed in 1943, the action begun in 1951 was not barred.[2]

■ The evidence before the trial court supports the finding that Joaquín Santiago, the defendant, was insolvent. Hence, we are not authorized to disturb it. *Santiago* v. *Rodríguez*, 72 P.R.R. 253, 261.

■■ During the hearing the defendants objected that Epifanio Toro Pérez, the vendor of the house, be permitted to testify against his own acts, as these appeared in the deed. Assuming that his testimony to that effect had not been admissible, the defendants waived the question they raised when they cross-examined said witness at length on that point.

Although § 25 of the Law of Evidence provides that "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreements other than the contents of the writing, . . . ." it has been decided, however, that said "rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument." *Ramírez* v. *Ramírez*, 65 P.R.R. 510; 514; *Nicorelli* v. *Ernesto López & Co.*, 26 P.R.R. 49, 52. Moreover, the defendants cross-examined the witness at length on that question. Consequently, the oral testimony offered was admissible in evidence.

Considering the nature of this suit, as hereinafter noted, we need not discuss the errors assigned under numbers 2 (in part), 4 and 5.

■ It might be alleged under the circumstances of the case that to avoid an unjust enrichment, a resulting trust in

---

[2] As an action for the collection of money, it is not barred either. Section 1864 of the Civil Code, 1930 ed.

favor of Marrero Rivera arose. See *Santiago* v. *Rodríguez*, 72 P.R.R. 253 and *Ruiz* v. *Ruiz*, 61 P.R.R. 794; *cf. Couverthie* v. *Santiago*, 62 P.R.R. 753; *Fernández* v. *Laloma*, 56 P.R.R. 348; 54 Am. Jur. 158, § 203. It is not possible, however, to arrive at such conclusion for the reasons immediately following.

Pursuant to Act No. 53 of July 11, 1921, p. 386, "To Create a Homestead Commission," as amended by Act No. 60 of April 30, 1928, p. 466, "the lots of land assigned to applicants . . . . and all buildings erected thereon, . . . . shall be disposed of or inherited only in accordance with the provisions of this Act"— (§ 6 (e)) —§ 9 thereof further providing "That no application for the lease of lands with a right to the ownership thereof under this Act shall be received unless the person making the same is . . . . (2) one whose annual income does not exceed fifteen hundred (1,500) dollars; . . . . (4) without other property in Porto Rico or elsewhere, the value of which exceeds three hundred (300) dollars." [3] In accordance with the evidence before the trial court, Juan Marrero was a relatively well-off person who had just sold a certain property and received $6,420.09 from the government. However, Joaquín Santiago was a person of limited means, for which reason the application filed in the office of the Homestead Division was made in his name. The deed of sale was likewise executed in his favor. The evidence believed by the court *a quo* shows that the intention of the parties in closing the transaction as they did was none other

[3] Section 16 of Act No. 53, provides, in addition, that: "All matters relative to the assignments of contracts and leases with the right of ownership, cancellation of contracts, qualification of heirs, in case of death, default in payment, or reversion of the land to The People of Porto Rico, shall be determined pursuant to such rules and regulations as may be issued by the Homestead Commission."

Section 24 thereof, on the other hand, provides that: "The rules and regulations adopted by the Homestead Commission now in force shall have the force of law."

This suit, to which the Puerto Rico Housing Authority is not a party— See Act No. 85 of May 8, 1945 (p. 304)—involves no question requiring an examination of said rules and regulations.

than to violate the provisions of the aforesaid Homestead Act, which prevented Marrero Rivera from directly acquiring the property in question. Such an action on their part was in contravention of said Act and, hence, null and void. See § 1207 of the Civil Code.

 Had the alleged trust been constituted by public deed, as required by § 5 of Act No. 41 of April 23, 1928, p. 294, it would be void for it would be contrary to the public morals.[4] In like manner, public morals prevent a resulting trust for such unlawful end. In regard to this question, II Restatement of the Law, Trust, § 444(d), p. 1360, recites that: "If a person who is not entitled to acquire government land pays the purchase price for such land and takes title to the land in the name of another for the purpose of defrauding the government, he cannot enforce a resulting trust in his favor, even though the government does not take any steps to set aside the transaction for fraud." Where a resulting trust does not arise, a revendicatory action must not prosper.

██ Nevertheless, the Rules of Civil Procedure are applicable to the instant case. (Rule 81.) The first of said Rules provides that: "These rules . . . . shall be construed to secure the just, speedy, and inexpensive determination of every action." And Rule 8(f) provides that: "All pleadings shall be so construed as to do substantial justice." Thus construed, we may arrive at the conclusion that although as an action of revendication and for the recovery of fruits the complaint has failed, it may however, prosper as an action for collection of money (in rem versum). Cf. Núñez v. Benítez, Chancellor, 65 P.R.R. 812; Sierra, Comm'r v. Nido, 71 P.R.R. 847, 858; Espinosa v. Ramírez, 71 P.R.R. 10, 14; Mena v. Llerandi, 70 P.R.R. 163, 168. Otherwise,

---

[4] Section 22 of Act No. 41, supra, also provides that:

"The constituent of a trust may create a trust in any form, for any purpose and upon any terms or conditions, not contravening the law or the public morals or not specifically prohibited by this Act........." (Italics ours.)

there would be an unjust enrichment in favor of the defendant Santiago. See *Compañía Popular* v. *District Court*, 63 P.R.R. 116, 122.

The judgment appealed from will be modified in the sense of granting plaintiffs only one half of the $4,500 paid for the property in question,[5] plus interest from August 31, 1949, on which date the plaintiffs' predecessor died, and as modified, it will be affirmed.

---

[5] The remaining 50% of the amount paid for the property belongs to Carmen Santiago, the widow of the predecessor of the plaintiffs. She appears in the suit as a defendant.